

**IT IS ORDERED as set forth below:**

**Date: March 28, 2019**

_____
**Paul Baisier**
**U.S. Bankruptcy Court Judge**

_____

## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| In re: | : | CASE NO. **18-55891-PMB** |
| | : | |
| **GLORIA WHITNEY HARRELL,** | : | CHAPTER 7 |
| | : | |
| Debtor. | : | |
| ───────────────────────── | : | |
| | : | |
| **RENASANT BANK F/K/A MERCHANTS** | : | |
| **AND FARMERS BANK,** | : | |
| | : | ADVERSARY PROCEEDING |
| Plaintiff, | : | |
| | : | NO. **18-5163** |
| v. | : | |
| | : | |
| **GLORIA WHITNEY HARRELL,** | : | |
| | : | |
| | : | |
| Defendant. | : | |
| ───────────────────────── | : | |

### ORDER (I) SETTING FORTH PRELIMINARY
### CONCLUSIONS ON CROSS-MOTIONS FOR SUMMARY
### JUDGMENT AND (II) SETTING RELATED HEARING AND DEADLINES FOR
### <u>SUPPLEMENTAL BRIEFING AND SUBMISSION OF ADDITIONAL EVIDENCE</u>

This matter comes before the Court on cross-motions for summary judgment (Docket Nos.

14 & 17) filed by Plaintiff Renasant Bank f/k/a Merchants and Farmers Bank ("Plaintiff") and the Defendant-Debtor (the "Debtor").  In this adversary proceeding (the "Adversary Proceeding"), Plaintiff objects to the dischargeability of the Debtor's obligations to Plaintiff pursuant to 11 U.S.C. § 523.  Specifically, Plaintiff's *Complaint of Renasant Bank Objecting to Dischargeability of Debt Pursuant to 11 U.S.C. § 523* (Docket No. 1-1)(the "Complaint") seeks entry of an order determining that the Debtor's obligations to Plaintiff are nondischargeable under Section 523(a)(2)(A).  Compl., p. 5.

In Plaintiff's *Motion for Summary Judgment that its Claims Against Debtor Gloria Whitney Harrell are Not Subject to Discharge Pursuant to 11 U.S.C. § 523* (Docket No. 14-1)(the "Plaintiff's Motion for Summary Judgment"), it seeks entry of final summary judgment as to its nondischargeability claims against the Debtor on the ground of collateral estoppel based upon prior state court judgments entered against the Debtor and other parties.[1]

The Debtor contends in her *Response in Opposition to Plaintiff's Motion for Summary Judgment, Cross Motion for Summary Judgment and Brief in Support of Same* (Docket No. 17)(the "Debtor's Motion for Summary Judgment") that summary judgment should be granted in her favor as to Plaintiff's nondischargeability claim because no genuine issues of material fact exist as to any alleged fraudulent conduct by her based upon prior state court judgments involving fraudulent transfers that the Debtor received.[2]  The Debtor asserts that because no question of fact exists as to

---

[1] Plaintiff also seeks summary judgment as to the Debtor's counterclaim asserted in her *Answer and Counterclaim for Declaratory Judgment and Other Relief of Gloria Whitney Harrell* (Docket No. 5)(the "Counterclaim").  At the time Plaintiff's Motion for Summary Judgment was filed, Plaintiff's *Motion to Dismiss Defendant's Counterclaim for Declaratory Judgment and Other Relief* (Docket No. 7)(the "Motion to Dismiss") was still pending.  The Court granted the Motion to Dismiss and dismissed the Counterclaim with prejudice by order entered on January 31, 2019 (Docket No. 29)(the "Motion to Dismiss Order).  Thus, Plaintiff's request for summary judgment as to the Counterclaim is moot.

[2] Also raised in the Debtor's Motion for Summary Judgment is the Counterclaim, which was dismissed with prejudice by the Motion to Dismiss Order entered on January 31, 2019.

2

her conduct or intent as an unknowing recipient of a fraudulent transfer, Debtor's Motion for

Summary Judgment should be granted, Plaintiff's Motion for Summary Judgment should be denied,

and the Debtor should be entitled to discharge her indebtedness to Plaintiff.

**BACKGROUND**

**I.    Prior State Court Litigation & Judgments**

The following facts are undisputed by the parties.  The underlying debt that Plaintiff seeks

to have this Court declare nondischargeable arises from a fraudulent transfer action filed on

February 4, 2011 in Fulton County Superior Court (the "Superior Court"), Case No.

2011CV196112 (the "UFTA Case").  Plaintiff brought the UFTA Case against the Debtor, her

mother ("Mrs. Harrell"), her sister ("Ms. Barney"), and other entities, including Furniture

Consignment Boutique Corporation ("Furniture Consignment"), an entity Plaintiff asserts was

incorporated by the Debtor.[3]  In the UFTA Case, Plaintiff sought to have various transfers made

by Mrs. Harrell to the other UFTA Case defendants found fraudulent under Georgia's Uniform

Fraudulent Transfer Act, O.C.G.A. § 18-2-70, *et. seq.*[4]  The transfers in the UFTA Case that

involve the Debtor include: (i) a transfer of real property located at 9400 Old Southwick Pass,

Alpharetta, Georgia 30022 (the "Property") by Mrs. Harrell to the Debtor and Ms. Barney (the

"Property Transfer"); and (ii) a transfer of $250,000.00 by Mrs. Harrell to Furniture Consignment

(the "Money Transfer").

---

[3] Plaintiff has not provided the Court with any incorporation documents showing that the Debtor was involved with incorporating Furniture Consignment, nor has Plaintiff provided any of the relevant organizational documents for Furniture Consignment or any information on who held the stock in Furniture Consignment at the relevant time.

[4] O.C.G.A. § 18-2-70 *et seq.*, which was formerly known as the "Uniform Fraudulent Transfers Act," was renamed the "Uniform Voidable Transactions Act" in 2015.  O.C.G.A. § 18-2-70 (2015).

On May 9, 2012, the Superior Court entered an *Order Granting Plaintiff's Motion for Summary Judgment* (the "Summary Judgment Order", Ex. C to Mot. Summ. J., Docket No. 14-5) in the UFTA Case, in which it found the Debtor and the other defendants liable for certain fraudulent transfers, including the Property Transfer and Money Transfer.  Specifically, the Superior Court granted summary judgment as to the following counts asserted by Plaintiff that relate to the Debtor: Count I for Mrs. Harrell's fraudulent transfer (both actual and constructive) of the Property to the Debtor and Ms. Barney ("Count I"), and Count III for Mrs. Harrell's fraudulent transfer (both actual and constructive) of $250,000.00 to Furniture Consignment, an entity purportedly incorporated by the Debtor ("Count III").  The other counts on which summary judgment was granted in the Summary Judgment Order include: (i) a count for a $100,000.00 transfer from Mrs. Harrell to her nonprofit organization, Gloria's House of Hope, Inc. ("Count V"); and (ii) a count for a $155,000.00 transfer from Mrs. Harrell to Ms. Barney ("Count VII"). The Summary Judgment Order also provided that the UFTA Case would be placed on the next available jury trial calendar for a determination of damages.

Upon entry of the Summary Judgment Order, the defendants in the UFTA Case appealed the Summary Judgment Order to the Georgia Court of Appeals, Case No. A12A2554.  The Court of Appeals affirmed the Summary Judgment Order on March 13, 2015.  (See Ex. D to Mot. Summ. J., Docket No. 14-6).  The defendants then sought relief in the Georgia Supreme Court, Case No. S13C1174; however, the Georgia Supreme Court denied their petition for certiorari on September 9, 2013.  (See Ex. D to Mot. Summ. J., Docket No. 14-6).

Prior to the jury trial on damages, the parties to the UFTA Case entered into a *Consent Order and Final Judgment for Equitable Relief* (the "Consent Judgment", Ex. E to Mot. Summ. J., Docket No. 14-7).  The Consent Judgment provides, *inter alia*, for a $1,000,000.00 joint and

4

several monetary judgment against the Debtor, Mrs. Harrell, and Ms. Barney for Counts I, III, V, and VII of Plaintiff's complaint in the UFTA Case.[5]  The Consent Judgment also provided that title to the Property would vest in Plaintiff by entry of a Special Judicial Deed executed by the Superior Court to reflect that Plaintiff is the true owner the Property.

Nearly two (2) years after entry of the Consent Judgment, on December 2, 2015, the Debtor and Ms. Barney (collectively, the "Daughters") filed a *Motion to Set Aside Judgment, for Protective Order, and Brief in Support of Motion* (the "Motion to Set Aside", Ex. 1 to Mot. to Dismiss, Docket No. 7-3) in the UFTA Case.  In the Motion to Set Aside, the Daughters sought to have the Consent Judgment set aside on several grounds, including, *inter alia*, that the Consent Judgment was void because the attorney that signed the Consent Judgment on their behalf, Mr. Ronald Doeve, did not represent them in the UFTA Case and therefore had no authority to enter into the Consent Judgment for them.

On January 27, 2016, the Superior Court entered an *Order on Motion to Set Aside Judgment* (the "Motion to Set Aside Order", Ex. F to Mot. Summ. J., Docket No. 14-8).  In the Motion to Set Aside Order, the Superior Court denied the Motion to Set Aside after hearing oral arguments from both parties.  The Daughters appealed the Motion to Set Aside Order to the Georgia Court of Appeals, Case No. A16A1671.  The Georgia Court of Appeals affirmed the Motion to Set Aside Order on February 23, 2017 (the "Court of Appeals Order", Ex. G to Mot. Summ. J., Docket No. 14-9).  Subsequent to the entry of the Court of Appeals Order, the Daughters filed a petition for

---

[5] Plaintiff include in its summary judgment materials a copy of the complaint it filed initiating the UFTA Case on February 4, 2011 (the "UFTA Complaint", Ex. B to Mot. Summ. J., Docket No. 14-4).  Notably, none of the other defendant-entities that appear in the caption of the Summary Judgment Order or the Consent Judgment are named as parties in the UFTA Complaint.  Moreover, none of the counts in the UFTA Complaint match the counts outlined in the Summary Judgment Order and Consent Judgment.  Plaintiff must have amended the UFTA Complaint at some point during the UFTA Case to include the other defendant-entities and to assert new claims against such entities. However, Plaintiff has failed to provide to the Court a copy of such an amended complaint.  Thus, this Court is without a copy of the actual complaint upon which the Summary Judgment Order and the Consent Judgment were entered.

certiorari in the Georgia Supreme Court for review of the Court of Appeals Order, Case No.
S17C1274.  On August 14, 2017, the Georgia Supreme Court entered an order denying the
Daughter's petition.  Ex. H to Mot. Summ. J., Docket No. 14-10.

## II.    The Cross-Motions for Summary Judgment

The Debtor filed a Chapter 7 bankruptcy petition on April 5, 2018.  On July 9, 2018,
Plaintiff filed the Complaint initiating the Adversary Proceeding.  In the Complaint, Plaintiff
objects to the dischargeability of the Debtor's obligations to the Plaintiff pursuant to 11 U.S.C.
§ 523(a)(2)(A).  Specifically, the Complaint seeks entry of an order declaring the debt owed to
Plaintiff as a result of the Summary Judgment Order and Consent Judgment entered in the UFTA
Case nondischargeable under Section 523(a)(2)(A) because the Superior Court's findings in these
orders include actual fraud committed by the Debtor.

In Plaintiff's Motion for Summary Judgment, Plaintiff seeks summary judgment on two
claims, one under Section 523(a)(2)(A) and the other under Section 523(a)(6).  However, Plaintiff
in its Complaint only alleges nondischargeability pursuant to 11 U.S.C. §§ 523(a)(2)(A) and not
(a)(6).  Because Plaintiff cannot seek summary judgment as to a claim not contained or asserted in
its Complaint,[6] the Court will only consider the parties' arguments as to the single claim at issue—
nondischargeability under Section 523(a)(2)(A).

The only argument put forth by Plaintiff in Plaintiff's Motion for Summary Judgment as to
its Section 523(a)(2)(A) claim is that the doctrine of collateral estoppel applies to preclude re-
litigation of the issue of Debtor's actual fraud based upon the findings and conclusions made by the
Superior Court in the Summary Judgment Order and Consent Judgment.  Plaintiff contends that the
findings in the Summary Judgment Order and Consent Judgment that the Property Transfer and

---

[6] Plaintiff never moved to amend the Complaint to include a count under 11 U.S.C. § 523(a)(6).  *See* Adversary
Proceeding docket, *passim*.

6

Money Transfer were transfers made pursuant to actual fraud under Georgia law are sufficient to constitute actual fraud under Section 523(a)(2)(A), such that the Debtor cannot re-litigate her actual fraud as the recipient of the Property Transfer and the Money Transfer in this Adversary Proceeding.

The Debtor also seeks summary judgment as to Plaintiff's claim under Section 523(a)(2)(A), arguing that the findings and conclusions in the Summary Judgment Order and Consent Judgment fail to demonstrate any actual fraud committed by the Debtor individually sufficient to find her underlying indebtedness to Plaintiff nondischargeable.  The Debtor acknowledges that a recipient of a fraudulent transfer can be subject to a nondischargeability action under Section 523(a)(2)(A) for actual fraud.  However, the Debtor contends that, as a recipient of a fraudulent transfer, she can only be found liable for "actual fraud" under Section 523(a)(2)(A) if she received the transfer with the requisite fraudulent intent.  The Debtor also notes that the only fraudulent transfer for which she was found liable in her individual capacity in the UFTA Case was the Property Transfer, such that the Money Transfer cannot form a basis for Plaintiff's nondischargeability action.

With regard to the findings made in the Summary Judgment Order and Consent Judgment as to the Property Transfer, the Debtor contends that such orders fail to contain any factual findings or conclusions that the Debtor acted with fraudulent intent when she received the Property Transfer, or that she in any way participated in the Property Transfer, other than being an unknowing recipient.  The Debtor maintains that she did not participate in the Property Transfer, that instead she was a minor and college student at the time of the Property Transfer, and that she only discovered that she was the recipient of the Property five (5) months after the transfer occurred.

Debtor Aff., Docket No. 20, ¶¶ 3-4.[7]  Thus, the Debtor argues that because the Summary Judgment Order and Consent Judgment fail to make any of the required findings or conclusions to find the debt owed to Plaintiff nondischargeable under 11 U.S.C. § 523(a)(2)(A), there are likewise no findings to which collateral estoppel could apply.  The Debtor goes on to assert that because the facts surrounding the Property Transfer demonstrate that she was merely a passive and unknowing recipient of such transfer, Plaintiff cannot have her debt to it declared nondischargable as being obtained by actual fraud under Section 523(a)(2)(A).

## PRELIMINARY CONCLUSIONS

### I.    Collateral Estoppel & Section 523(a)(2)(A) "Actual Fraud"

Exceptions to discharge are narrowly construed in the debtor's favor to effectuate the fresh start policy of the Bankruptcy Code.  *In re Lowery*, 440 B.R. 914, 921 (Bankr. N.D. Ga. 2010)(citing *Hope v. Walker* (*In re Walker*), 48 F.3d 1161, 1164–65 (11th Cir. 1995)).  The creditor bears the burden of proof in establishing by a preponderance of the evidence that the subject debt meets an exception to discharge under 11 U.S.C. § 523.  *Grogan v. Garner*, 498 U.S. 279, 286-88, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991).

Section 523(a)(2)(A) excepts from discharge "money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by . . . false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition . . ." 11 U.S.C. § 523(a)(2)(A).  Actual fraud is a broader exception to discharge than a claim for false representation, and "consists of any deceit, artifice, trick, or design involving direct and active

---

[7] The Debtor also notes that Plaintiff does not dispute this point in light of a statement it made in an appellate brief submitted in connection with the appeal of the Summary Judgment Order.  *See* Docket No. 17-2, p. 6 ("Neither of Mrs. Harrell's daughters was even aware of the House Transfer at the time it was made.  It was not until *five months later*, in preparation for their April 2011 depositions, when each learned that they owned the Harrell Residence.")(emphasis in original).

operation of the mind, used to circumvent or cheat another . . ."  *In re Robertson*, 576 B.R. 684, 715 (Bankr. N.D. Ga. 2017)(quoting *FDS Nat'l Bank v. Alam* (*In the Matter of Alam*), 314 B.R. 834, 840 (Bankr. N.D. Ga. 2004)).

The doctrine of collateral estoppel serves "to prevent the re-litigation of issues previously contested and determined by a valid and final judgment in another court."  *Caitlin Energy, Inc. v. Rachel* (*In re Rachel*), 527 B.R. 529, 537 (Bankr. N.D. Ga. 2015).  In *Grogan*, *supra*, the Supreme Court clarified that collateral estoppel applies in a nondischargeability proceeding.  *Grogan*, 498 U.S. at 284, n.11.  Under such a circumstance, a bankruptcy court may not apply collateral estoppel to "the ultimate issue of dischargeability," but "it may utilize[ ] issue preclusion to reach conclusions about facts that the court would then consider as evidence of nondischargeability."  *CC Fin., LLC v. Harvey* (*In re Harvey*), 2017 WL 432788, *2 (Bankr. N.D. Ga. Jan. 31, 2017)(internal citations and quotations omitted).

In determining whether to give the Summary Judgment Order and Consent Judgment preclusive effect, this Court must look to Georgia law because "a federal court must accord the judgment the same preclusive effect as it would be given under the law of the state in which the judgment was rendered."  *Rachel*, 527 B.R. at 537; *see also Hebbard v. Camacho* (*In re Camacho*), 411 B.R. 496, 501 (Bankr. S.D. Ga. 2009)(applying Georgia's collateral estoppel requirements to a judgment rendered in a Georgia court).  Under Georgia law, the following elements must be met in order to assert the doctrine of collateral estoppel: "(1) identity of the parties is the same; (2) identity of the issues is the same; (3) actual and final litigation of the issue in question occurred; (4) the adjudication was essential to the earlier action; and (5) the parties had a full and fair opportunity to litigate the issues in question."  *Homeland Group, LLC v. Lawson* (*In re Credolawson*), 546 B.R. 888, 892-93 (Bankr. N.D. Ga. 2016).

9

Of all the collateral estoppel elements, the "identity of the issues" element poses the most difficulty to Plaintiff's application of the doctrine to the Summary Judgment Order and Consent Judgment. To determine whether this element of collateral estoppel is satisfied, the Court must examine whether the issues decided by the Superior Court in the Summary Judgment Order and Consent Judgment fall under the actual fraud exception to discharge of Section 523(a)(2)(A).

As noted *supra*, 11 U.S.C. § 523(a)(2)(A) renders nondischargeable "money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by . . . false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition[.]" 11 U.S.C. § 523(a)(2)(A). The traditional elements of common law fraud have been found to apply to Section 523(a)(2)(A) claims, which include the following: "(1) the debtor made a false representation to deceive the creditor, (2) the creditor relied on the misrepresentation, (3) the reliance was justified, and (4) the creditor sustained a loss as a result of the misrepresentation." *Lusk v. Williams* (*In re Williams*), 282 B.R. 267, 271 (Bankr. N.D. Ga. 2002)(quoting *In re Bilzerian*, 153 F.3d 1278, 1281 (11th Cir. 1998)). However, the Supreme Court in *Husky Int'l Elecs., Inc. v. Ritz*, ––– U.S. ––––, 136 S.Ct. 1581, 1584, 194 L.Ed.2d 655 (2016) recognized that claims for actual fraud under Section 523(a)(2)(A) can include types of fraud effectuated without a false representation, thereby articulating two distinct paths for nondischargeability claims under Section 523(a)(2)(A).

In *Husky*, the Chapter 7 debtor, Ritz, served as a director and shareholder of Chrysalis Manufacturing Corp., an entity that had incurred a debt to Husky. Ritz initiated a series of fraudulent transfers from Chrysalis to other entities controlled by Ritz in an effort to evade repayment of Husky's debts. Upon Ritz's filing for bankruptcy, Husky initiated an adversary proceeding seeking to have its debt declared nondischargeable under 11 U.S.C. § 523(a)(2)(A)

10

based upon actual fraud by, in essence, piercing the corporate veil to hold Ritz personally liable for the fraudulent transfers made by and to entities he controlled.  The issue before the Supreme Court was whether a fraudulent transfer scheme, where the debtor served as both the transferor and recipient, could constitute "actual fraud" under 11 U.S.C. § 523(a)(2)(A).

The Fifth Circuit Court of Appeals had rejected Husky's argument that "actual fraud" under Section 523(a)(2)(A) can encompass forms of fraud that do not require a fraudulent representation by the debtor to the creditor, as a typical fraudulent conveyance is not an inducement-based fraud like false pretenses and false representation claims under Section 523(a)(2)(A), which do require some form of fraudulent inducement by the debtor.  The Supreme Court reversed, holding that a misrepresentation by the debtor is not a requirement for an actual fraud claim under Section 523(a)(2)(A).  *Husky*, 136 S.Ct. at 1590.

In holding that actual fraud under 11 U.S.C. § 523(a)(2)(A) can "encompasses forms of fraud, like fraudulent conveyance schemes, that can be effected without a false representation[ ]", the Supreme Court ruled that a false representation by the debtor is no longer required to establish a claim for nondischargeability under Section 523(a)(2)(A).  *Husky*, 136 S.Ct. at 1586.  The Supreme Court then found that recipients of fraudulent transfers meet the "obtained by" requirement of Section 523(a)(2)(A) and therefore can be subject to Section 523(a)(2)(A) actions for debts traceable to such transfers:

> It is of course true that the transferor does not "obtai[n]" debts in a fraudulent conveyance. But the recipient of the transfer—who, with the requisite intent, also commits fraud—can "obtai[n]" assets "by" his or her participation in the fraud. If that recipient later files for bankruptcy, any debts "traceable to" the fraudulent conveyance will be nondischargeable under § 523(a)(2)(A). Thus, at least sometimes a debt "obtained by" a fraudulent conveyance scheme could be nondischargeable under § 523(a)(2)(A). Such circumstances may be rare because a person who receives fraudulently conveyed assets is not necessarily (or even likely to be) a debtor on the verge of bankruptcy, but they make clear that fraudulent conveyances are not wholly incompatible with the "obtained by" requirement.

*Id*. at 1589 (internal citations omitted).  The Supreme Court explained that, in the fraudulent conveyance context, "the fraudulent conduct is not in dishonestly inducing a creditor to extend a debt. It is in the acts of concealment and hindrance."  *Id*. at 1587.

In fact, other bankruptcy courts in this district have, in pre-*Husky* decisions, noted that actual fraud can involve actions not encompassed by the traditional fraud elements utilized for false pretenses or false representation claims under Section 523(a)(2)(A).  In *In re Quay*, 2005 WL 6488242 (Bankr. N.D. Ga. March 29, 2005), the creditor brought a claim for actual fraud pursuant to 11 U.S.C. § 523(a)(2)(A) based upon the debtor's alleged receipt of the proceeds of a fraudulent transfer.  The court in *Quay* concluded that, in order to succeed on its actual fraud claim against the debtor-recipient, the creditor would have to prove: "1) the transferor conveyed the property with the intent to hinder or delay his creditors; and 2) the transferee was a participant in the fraud, such that it could be said that the debtor engaged in 'deceit, artifice, trick, or design involving direct and active operation of the mind, used to circumvent and cheat another.'"  *Quay*, 2005 WL 6488242, at *9 (quoting *McLellan v. Cantrell*, 17 F.3d 890, 893 (7th Cir. 2000)).

Similarly, in *In re Kendrick*, 314 B.R. 468 (Bankr. N.D. Ga. 2004), the bankruptcy court explained:

> Although many fraud claims involve a false representation, a false representation is not essential to an actual fraud claim under § 523(a)(2)(A). Rather, "actual fraud" is a much broader term than false pretenses or false representation and may encompass deceit, artifice, trick, or design involving direct and active operation of the mind, used to circumvent and cheat another.

*Kendrick*, 314 B.R. at 471-72 (internal citations and quotations omitted); *see also Alam*, *supra*, 314 B.R. at 840 (noting that "[t]he existence of a fraudulent misrepresentation is not necessary to an actual fraud claim under § 523(a)(2)(A).").

Accordingly, to have the debt owed to Plaintiff by virtue of the Summary Judgment Order and Consent Judgment declared nondischargeable under 11 U.S.C. § 523(a)(2)(A) for actual fraud on the grounds of collateral estoppel, there must be some finding by the Superior Court that the Debtor, as the recipient of transfers found to constitute actual fraud, acted with the requisite fraudulent intent in receiving such transfers. Such a finding would be evidenced by either a factual finding or legal conclusion that the Debtor somehow participated in the Property Transfer or Money Transfer in a way to conceal the underlying assets from Plaintiff or to hinder Plaintiff's collection efforts against Mrs. Harrell, or otherwise engaged in "deceit, artifice, trick, or design involving direct and active operation of the mind, used to circumvent and cheat [Plaintiff]." *Kendrick*, 314 B.R. at 471-72 (internal citations and quotations omitted).

## II. Problems with the Summary Judgment Order & Consent Judgment

### a. Count I

As to Count I regarding the Property Transfer, the Summary Judgment Order makes the following factual findings:

- M&F Bank had claims totaling over $3 million dollars against Mrs. Harrell at the time of the transfers at issue in this lawsuit. Specifically, before the Deed of Gift was signed, M&F Bank had obtained a judgment against Mrs. Harrell and others on September 30, 2010 in Walton County, Florida (the "Florida Judgment") for the outstanding balance of a promissory note in the principal amount of $472,702.85. Shortly before that, on or around September 16, 2010, M&F Bank also began demanding repayment of a separate promissory note made in the original principal amount of $2,845,000.

- Mrs. Harrell was insolvent by September 2010 in that she could not pay her bills as they came due, and her debts exceeded her assets.

- The House Transfer was made to Mrs. Harrell's daughters, Rhonda Barney and Whitney Harrell.

- Neither Rhonda Barney nor Whitney Harrell paid Mrs. Harrell any amount of money in exchange for the House Transfer.

- Mrs. Harrell continues to reside at the Harrell Residence.

- The Harrell Residence remained on the Harrells' insurance policy after the House Transfer.

Summary Judgment Order, pp. 2-3.

The Summary Judgment Order made the following legal conclusions regarding Plaintiff's claim for actual fraud under O.C.G.A. § 18-2-74 as to the Property Transfer:

M&F Bank's unrebutted proof establishes at least five (5) of the badges of fraud identified in O.C.G.A. § 18-2-74(b) with respect to the House of (sic) Transfer:

- The House Transfer was made to Mrs. Harrell's daughters who are "insiders" under the law.  [*See* O.C.G.A. § 18-2-74(b)(1)]

- Mrs. Harrell retained possession or control of the Harrell Residence after the House Transfer; [*See* O.C.G.A. § 18-2-74(b)(2)]

- Before the House Transfer was made, Mrs. Harrell had been sued or threatened with suit; [*See* O.C.G.A. § 18-2-74(b)(4)]

- Mrs. Harrell was insolvent or became insolvent shortly after the House Transfer was made; and [*See* O.C.G.A. § 18-2-74(b)(9)]

- The House Transfer occurred after a substantial debt owed to M&F Bank was incurred. [*See* O.C.G.A. § 18-2-74(b)(10)]

Considering these several indicia of intent together, the Court finds that the House Transfer was made with the actual intent to hinder, delay, and defraud M&F Bank and is, therefore, fraudulent as a matter of law.

Summary Judgment Order, pp. 3-4.

Additionally, the Consent Judgment, though it did not make any findings as to actual fraud, did recite such findings from the Summary Judgment Order.  *See* Consent Judgment, p. 4 ("The parties have agreed to the following terms in full and final resolution of Plaintiff's outstanding claims for relief against Defendants for the fraudulent transfers under Counts I, III, V, and VII. As this Court previously found, the House Transfer and the Money Transfers were fraudulent as a

14

matter of law under O.C.G.A. § 18-2-74(a)(1) in that they were completed with the <u>actual intent to hinder, delay, and defraud</u>.")(emphasis in original).

Both state court orders lack any facts or conclusions that find or conclude that the Debtor, as the recipient of a transfer, had the requisite fraudulent intent.  Nor are there any findings by the Superior Court that the Debtor was a knowing and active participant in the Property Transfer, or that she acted to conceal the Property in an effort to hinder Plaintiff's collection efforts against her mother.  Rather, the findings and conclusions contained in the Summary Judgment Order and Consent Judgment only relate to the mindset of Mrs. Harrell, to the transfer itself, and to the existence of related "badges of fraud" under Georgia's UFTA.  Notably, none of the badges of fraud recited in the Summary Judgment Order bear on the *Debtor's intent* in receiving the Property, nor to any participation by her in a fraudulent transfer scheme involving the Property.

Here, the only factual findings that reference the Debtor in the Summary Judgment Order as to the Property Transfer are: (i) that Mrs. Harrell transferred the Property to the Debtor and Ms. Barney; and (ii) that the Debtor and Ms. Barney did not pay any consideration for the Property. Notably, none of the facts reveal any act taken by the Debtor that indicates any type of fraudulent intent to receive the Property from Mrs. Harrell, or that the Debtor acted in a way to conceal the Property or hinder Plaintiff's efforts to collect from Mrs. Harrell.[8]

The legal conclusions in the Summary Judgment Order are similarly lacking regarding the Debtor's intent in receiving the Property or her participation in the Property Transfer.  The only badge of fraud in the Superior Court's actual fraud analysis of the Property Transfer that references the Debtor is that she, along with Ms. Barney, are "insiders" under applicable state law.  No other badges of fraud outlined in the Summary Judgment Order as to the Property Transfer even mention

---

[8] In fact, the undisputed facts demonstrate that the Debtor was unaware of the Property Transfer at the time it occurred. *See* fn.12, *infra*.

the Debtor, much less relate to her participation in the transfer or whether she acted with fraudulent intent in receiving the Property. Instead, most of the findings and conclusions of the Summary Judgment Order as to the Property Transfer related to Mrs. Harrell's actions as the transferor and her financial affairs and relationship to Plaintiff at the time of the Property Transfer.

Hence, the Summary Judgment Order and Consent Judgment, taken together, fail the "identity of the issues" prong of the collateral estoppel analysis, as neither order contains findings or conclusions that track with the required findings under 11 U.S.C. § 523(a)(2)(A) to find the debt nondischargeable as being obtained through actual fraud committed by the Debtor.

**b.    Count III**

As to Count III, the Summary Judgment Order made the following factual findings and legal conclusions:

- Furniture Consignment was incorporated on October 8, 2010 by Whitney Harrell, less than ten (10) days after the Florida Judgment was entered, but never became an operational business;

- After the $250,000 Transfer was made to Furniture Consignment, Mr. and Mrs. Harrell effectively retained possession or control of the money and used it to pay off debts bearing no relation to Furniture Consignment. [*See* O.C.G.A. § 18-2-74(b)(2)].

- The $250,000 Transfer was deposited into three separate bank accounts that were closed within only a few days, such that the details of when and to whom the $250,000 was paid were concealed. [*See* O.C.G.A. § 18-2-74(b)(3)].

- The $250,000 Transfer was made after M&F Bank obtained the Florida Judgment against Mrs. Harrell and was threatening suit to enforce a separate note. [*See* O.C.G.A. § 18-2-74(b)(4)].

- The $250,000 Transfer was made when Mrs. Harrell was insolvent. [*See* O.C.G.A. § 18-2-74(b)(9)].

- The $250,000 Transfer was made in order to prevent the funds from being garnished by M&F Bank.

16

The evidence introduced by Defendants fails to demonstrate that there is any dispute regarding these facts. Taken together, the Court finds that M&F Bank established as a matter of law that Mrs. Harrell acted with an actual intent to hinder, delay, or defraud M&F Bank. O.C.G.A. § 18-2-74(a).

Summary Judgment Order, p. 5.

The only "badge of fraud" outlined in the Summary Judgment Order as to the Money Transfer that references the Debtor is that Furniture Consignment was incorporated by the Debtor ten (10) days before a Florida state court judgment was entered against Mrs. Harrell, and that the entity was never operational. Nowhere does the Summary Judgment Order make a legal conclusion as to the participation in the Money Transfer by Furniture Consignment or the Debtor. Rather, like the Property Transfer, the findings in the Summary Judgment Order as to the Money Transfer predominantly relate to Mrs. Harrell's actions and intent.

It is also unclear whether Count III was asserted only against Furniture Consignment, or whether it was asserted against both the entity and the Debtor. The UFTA Complaint that Plaintiff included in its materials does not include Furniture Consignment as a named defendant (nor does it include the other entities named in the Summary Judgment Order) and is clearly not the complaint upon which the Summary Judgment Order was entered. *See* Ex. B to Plaintiff's Mot. for Summ. J., Docket No. 14-4. Without the actual complaint to which the Summary Judgment Order relates, the Court can only guess against whom Count III was asserted; and based upon the findings as to Count III, it appears it was only asserted against Furniture Consignment and not the Debtor individually.

In addition to the lack of any findings or conclusions as to actual fraud committed by Furniture Consignment or the Debtor in the Summary Judgment Order, Plaintiff has failed to assert any basis for piercing the corporate veil to hold the Debtor personally liable for actions committed by Furniture Consignment. Simply because the Debtor incorporated an entity found to be involved

in a fraudulent transfer does not automatically entitle Plaintiff to assert that the Debtor, in her individual capacity, is also liable.

Georgia law sets for specific requirements for piercing the corporate veil to hold corporate owners personally liable for actions committed by the entity.  Piercing the corporate veil is typically sought to "remedy injustices which arise where a party has over extended his privilege in the use of a corporate entity in order to defeat justice, perpetuate fraud or evade contractual or tort responsibility." *Brunswick Mfg. Co. v. Sizemore*, 183 Ga. App. 482, 483–84 (1987)(citation omitted).  To pierce the corporate veil, there must be some showing that "the owner abused the corporate form by disregarding the separateness of legal entities by commingling on an interchangeable or joint basis or confusing the otherwise separate properties, records, or control." *Scott Bros., Inc. v. Warren*, 261 Ga. App. 285, 287-88 (2003).  Evidence sufficient to justify piercing the corporate veil could include: "(i) the owner using corporate funds for personal expenses; (ii) the owner bleeding one company to pay the expenses of another company he owns; (iii) or the owner treating all his companies and himself as one unit."  *Id.* at 288 (citations omitted).

Here, Plaintiff's Motion for Summary Judgment contains no facts, reasoning, or legal basis for piercing the corporate veil of Furniture Consignment to hold the Debtor personally liable for the Money Transfer.  Moreover, none of the findings in the Summary Judgment Order or Consent Judgment reveal a sufficient basis for piercing the corporate veil.  In fact, as to Count III, it appears that the Superior Court only found Furniture Consignment, and not the Debtor, liable for the Money Transfer.[9]  Plaintiff has also failed to include in its materials the relevant organizational documents

---

[9] As noted *supra*, the Court can only speculate as to this fact, because Plaintiff failed to provide to the Court a copy of the actual complaint upon which the Summary Judgment Order was entered.

for Furniture Consignment so that the Court could review the extent of the Debtor's participation in the formation or operation of that entity.[10]

In light of the foregoing, it appears that Count III also fails the "identity of the issues" prong of the collateral estoppel analysis. Not only does the Summary Judgment Order fail to include any findings as to actual fraud committed by Furniture Consignment or the Debtor, but both the Summary Judgment Order and Consent Judgment fail to contain any basis for piercing the corporate veil to hold the Debtor liable for any actions of Furniture Consignment.

### c.    Apportionment

Notwithstanding the substantive issues with the state court orders and whether they include findings as to actual fraud committed by the Debtor sufficient to meet the "identity of issues" element for collateral estoppel as to liability, the Consent Judgment also has an apportionment problem as to damages. "In addition to determining the preclusive effect of the liability found in the state court orders, the Court must also analyze the preclusive effect of the damages found in such order. This is the case because most civil proceedings involve two distinct elements: liability and damages." *In re Lowery*, 440 B.R. 914, 923 (Bankr. N.D. Ga. 2010). Hence, courts must analyze the liability and damages elements of an order (or in this case, two orders) separately to determine whether to "give preclusive effect to either, both or neither." *Id*. Here, the Summary Judgment Order relates to the liability element of Plaintiff's claims in the UFTA Case, while the Consent Judgment relates to damages. Even if the Court found that the Summary Judgment Order's

---

[10] It appears that Debtor may have been a minor at the time Furniture Consignment was purportedly incorporated by her. According to the Debtor's Affidavit (Docket No. 20, ¶ 4), she was a minor at the time the Property Transfer. According the Summary Judgment Order, the Property was transferred through a deed of gift dated November 5, 2010 and recorded November 16, 2010. Summary Judgment Order, p. 2. Thus, if Debtor was a minor in November 2010, then she was also a minor when Furniture Consignment was incorporated one month earlier in October 2010. Without the relevant organizational documents, the Court is unable to discern the capacity in which the Debtor served in the corporate structure of Furniture Consignment. The Debtor's age at the time of incorporation and the lack of information regarding the capacity in which she was involved in Furniture Consignment further illustrates the potentially tangential relationship between Furniture Consignment and the Debtor.

findings regarding the Debtor's involvement in the Property Transfer and Money Transfer met the

requirements for establishing her liability for actual fraud under 11 U.S.C. § 523(a)(2)(A), the

damages element of the Consent Judgment likely could not be given preclusive effect.

> The Consent Judgment provides as follows:
>
>> M&F Bank is hereby awarded a joint and several final judgment against Defendants Gloria Harrell, Rhonda Barney, and Whitney Harrell (the "Harrell Defendants") in the amount of One Million Dollars ($1,000,000.00) representing damages for Counts I, III, V, and VII of the Complaint for the fraudulent transfers."

Consent Judgment, p. 4.

The joint and several nature of the monetary award, and the fact that it was not apportioned

as to the various counts, make it impossible for this Court to determine exactly which part of the $1

million is attributable to actual fraud committed by the Debtor (to the extent Plaintiff ultimately

proves any such fraud). Plaintiff cannot simply have the full $1 million declared nondischargeable

under Section 523(a)(2)(A) for actual fraud committed by the Debtor; rather, only the portion of

the monetary award that relates to the Debtor's actual fraud can be excepted from discharge.

Because Counts V and VII do not involve the Debtor at all, it is clear that the entire $1,000,000.00

could not relate to any fraud by the Debtor. Accordingly, even if the issue of the Debtor's liability

for actual fraud based upon the Superior Court's findings in the Summary Judgment Order could

be given preclusive effect, it would be impossible for this Court to determine which portion of the

damages in the Consent Judgment relate to *the Debtor's actual fraud*, as opposed to some other,

non-actual fraud claim against a non-debtor party in the UFTA Case.[11]

---

[11] This analysis is complicated by the non-obvious genesis of the $1,000,000.00 figure itself. The Consent Order provides for a $1,000,000.00 judgment, plus the conveyance of the Property to Plaintiff, as a resolution of Count I (Property), Count III ($250,000.00), Count V ($100,000.00) and Count VII ($155,000.00). With the Property to be conveyed to Plaintiff separately by a judicial deed to issue pursuant to the Consent Judgment, it is difficult to ascertain how Plaintiff could have suffered $1,000,000.00 in additional damages under the applicable Counts, which otherwise involved the transfer of only $505,000.00. To the extent the balance of the $1,000,000.00 represents a settlement discount off of the value of the Property (which, based on the Consent Order terms, may have been worth $575,000.00), and if the transfer of the Property to Plaintiff was actually made, the Debtor may be entitled to a credit

**FURTHER BRIEFING AND SUBMISSION OF EVIDENCE**

The fact that Plaintiff's collateral estoppel argument as to the findings in the Summary Judgment Order and Consent Judgment appears unsuccessful may not foreclose its ability to have its debt declared nondischargeable under 11 U.S.C. § 523(a)(2)(A).  It is possible that, despite the Debtor's assertion that she was unaware of the transfers at the time they occurred, the Debtor's actions after she received the transfers may be sufficient to constitute actual fraud under Section 523(a)(2)(A).  The parties have not addressed this issue in their briefs, but it may (or may not) be the case that the recipient of a fraudulent transfer, despite being unaware of the transfer at the moment it occurs, may nonetheless be liable for actual fraud based upon her subsequent actions.  Here, the record lacks material evidence as to what the Debtor did after receiving the fraudulent transfers.  The Court only knows that the Debtor did not participate in the Property Transfer and did not know about the Property Transfer until five months after it occurred.  *See* Debtor Aff., ¶ 3; *Defendant's Statement of Material Facts as to Which There is No Genuine Issue to be Tried* (Docket No. 18, ¶ 2).[12]

Hence, whether the Debtor's activities after the transfers can, as a legal matter, constitute actual fraud sufficient to support nondischargeability, and if so whether the Debtor acted with the requisite intent after receiving the Property Transfer and/or Furniture Consignment received the

---

for the value of the Property against the $1,000,000.00, and the actual amount to be allocated (if necessary) may be substantially less than $1,000,000.00.  But the burden on all of those issues, to the extent they can be sorted out, is on Plaintiff.

[12] Plaintiff did not deny this fact in its *Response to Defendant Gloria Whitney Harrell's Statement of Material Facts as to Which There is No Genuine Issue to be Tried* (Docket No. 25)("Plaintiff's Response to Material Facts").  Rather, Plaintiff merely "denie[d] that this fact is material to the issues in dispute in this adversary proceeding."  Plaintiff's Response to Material Facts, ¶ 2.  Pursuant to BLR 7056-1(a)(2), statements of material fact "that are not specifically controverted in respondent's statement shall be deemed admitted."  As Plaintiff's response does not specifically controvert the Debtor's statement, but merely denies that it is material, this fact is deemed admitted under BLR 7056-1(a)(2).

Money Transfer, remain outstanding factual and legal issues that are necessary to address to resolve Plaintiff's Section 523(a)(2)(A) claim.  In addition, the Court is without the proper testimony and documentary evidence to determine the extent of the Debtor's involvement in Furniture Consignment and whether Count III was actually asserted against her individually in order to determine whether the Money Transfer can properly form the basis of a Section 523(a)(2)(A) claim. As the Court lacks both legal analysis and evidence regarding these issues, further briefing and submission of evidence is required.

In light of the foregoing, it is **ORDERED AND NOTICE IS HEREBY GIVEN** that a hearing on Plaintiff's Motion for Summary Judgment and Defendant's Motion for Summary Judgment will be held on **June 5, 2019** at **9:30 a.m.**, in **Room 1202, Richard B. Russell Federal Building and United States Courthouse, 75 Ted Turner Drive, S.W., Atlanta, Georgia 30303**. And it is further

**ORDERED** that the parties are directed to file supplemental briefs and related evidence[13] regarding the issues outlined herein on or before **May 15, 2019**.  Any responses to such briefs shall be filed on or before **May 24, 2019**.

The Clerk is directed to serve a copy of this Order and Notice upon Plaintiff, counsel for Plaintiff, the Debtor, and counsel for the Debtor.

**[END OF DOCUMENT]**

---

[13] Such evidence should include, but is not limited to, the relevant formation and organizational documents for Furniture Consignment and the (presumably amended) complaint upon which the Summary Judgment Order was entered.